**SO ORDERED.**

**SIGNED this 05 day of April, 2007.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In Re:

**WILLIAM MICHAEL STEVENS and**
**HOLLY LYNNA STEVENS,**

       **DEBTORS.**

**CASE NO. 05-10555**
**CHAPTER 7**

**STEVEN L. SPETH, Trustee,**

       **PLAINTIFF,**

**v.**

**ASSOCIATES IN WOMEN'S HEALTH,**
**P.A.,**

       **DEFENDANT.**

**ADV. NO. 05-5816**

### MEMORANDUM AND ORDER  DENYING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a preference action brought by the Chapter 7 Trustee against Associates in Women's Health, P.A., an alleged insider of Debtor William Michael Stevens. Defendant has moved for summary judgment. Plaintiff Steven L. Speth, Chapter 7 Trustee (hereafter "Trustee"), appears by Timothy J. King, of Speth and King. Defendant Associates in Women's Health, P.A. (hereafter "AWH") appears by John K. Pearson of Hinkle Elkouri Law Firm L.L.C. There are no other appearances. The Court has jurisdiction.[1]

**NATURE OF THE ACTION.**

Debtor William Michael Stevens (hereafter "Debtor") is a physician who was an employee, shareholder, and director of AWH, a professional corporation. After terminating his relationship with AWH, Debtor filed for relief under Chapter 7 on February 11, 2005. Trustee brings this action pursuant to 11 U.S.C. 547(b)[2] to avoid the payments by Debtor to AWH of $203,507.99 between approximately March 8, 2004 and October 1, 2004.

AWH moves for summary judgment, contending that: (1) None of the payments can be recovered as preferences because the transfers were more than 90 days but less than one year pre-petition and AWH is not an insider of the Debtor; (2) because AWH had exercised a

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. An action to avoid preferential transfers is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(F). There is no objection to venue or jurisdiction over the parties.

[2] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

2

common law right of offset, three of the transfers cannot be considered preferential under § 547(b)(5); and (3) the Trustee cannot prevail because the uncontroverted facts establish that Debtor was not insolvent at the time of the transfers. Trustee contends there are material facts in controversy which preclude summary judgment on grounds 1 and 3 and that reliance on ground 2 is barred by prior order of this Court, as well as on the merits.

**SUMMARY JUDGMENT STANDARDS.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A genuine issue of material fact is a factual dispute that may affect the outcome of the case and one that a reasonable trier of fact could find in favor of either party.[4] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[5]

The initial burden is on the moving party to establish the absence of a genuine issue concerning any material fact.[6] If the movant fails to fulfill this initial burden, summary judgment can not be entered even if the non-moving party does not come forward with evidence in support

---

[3] Fed. R. Civ. P. 56(c). Future references to the rules in the text shall be to the rule number only.

[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Adikes v. Kress & Co.*, 398 U.S. 144, 159-160 (1970).

3

of its position.[7]  "'[T]he party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment.  No defense to an insufficient showing is required.'"[8]  When the moving party does meet the initial burden, the nonmoving party may defeat the motion for summary judgment by presenting evidence from which a trier of fact might return a verdict in its favor.[9]  In determining this, all evidence and inferences are viewed in the light most favorable to the nonmoving party.[10]

**FINDINGS OF FACT.**

**A. Insider Status.**

For purposes of summary judgment, based upon the memoranda of the parties, the Court finds that the following facts regarding insider status are uncontroverted.  AWH is a professional association organized under the Kansas Corporation Code.  Debtor was a founding shareholder-physician and was employed by AWH pursuant to an employment agreement dated December 12, 1996.  When AWH was organized, Debtor was elected to the board of directors and to the position of treasurer.  Debtor was not reelected to the position of treasurer at the stockholder's meeting on September 23, 2003.

Under Debtor's employment agreement, billings for professional services performed by Debtor with AWH were assigned to and collected by AWH, and Debtor was entitled to draw a

---

[7] *Id.*

[8] *Id.*, 398 U.S. at 161, *quoting* J. Moore, Federal Practice ¶ 56.22[2], pp. 2824-2825 (2d ed. 1966).

[9] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 257.

[10] *Id.*, 477 U.S. at 255.

4

monthly salary in an amount of money set periodically by mutual agreement between Debtor and AWH. Debtor's production was reviewed periodically and his salary adjusted. As of March 2004, Debtor's draw amount was $14,000 monthly.

On December 12, 2002, AWH made Debtor an open ended, unsecured, interest free loan of $79,085.99. In February 2003, Debtor went to AWH's contract certified public accountant and obtained an undocumented loan of $15,000 for a couple of weeks. No approval by anyone at AWH other than Debtor was required.

In approximately 2003, Debtor began training to do aesthetic procedures and to de-emphasize his OB/GYN practice with AWH. By late 2003, Debtor owed AWH approximately $228,507.99 under his employment agreement and $25,000 under the short term loan made by AWH to Debtor. In 2003, Debtor began discussions with AWH about resigning. On February 24, 2004, Debtor faxed his resignation from the board of directors of AWH effective as of that date. In March and June 2004, AWH did not pay Debtor his $14,000 monthly salary, and AWH directed its accountant to apply the amounts against his debt.[11] AWH's 401(k) plan was amended on March 1, 2004, to allow hardship withdrawals, and Debtor requested the withdrawal of the maximum amount from his account. Debtor received a check from his 401(k) account in the amount of $204,635.09 on March 8, 2004. On the same day, Debtor paid AWH $79,085.99 in satisfaction of the 2002 loan and $25,000 to pay off the unsecured, interest free and undocumented loan from AWH.

Between February and June 2004, AWH and Debtor negotiated a Separation Agreement and General Release ("Settlement Agreement"), under which Debtor withdrew as a shareholder

---

[11] During 2004, Debtor was paid by AWH compensation totaling $48,800.

and an employee of AWH effective June 30, 2004. The Separation Agreement was executed on June 29, 2004, and modified by a document dated July 7, 2004. The Separation Agreement provides that Debtor's obligation to AWH was $124,422, to be paid as follows: $18,600 credit for stock repurchase; $37,051 from collections for June; $50,000 cash; and $18,771 to be withheld from collections by AWH of Debtor's pre-separation accounts receivable in August, September, and October, 2004.

Pursuant to the Separation Agreement, on June 29, 2004, AWH transferred to Debtor all right, title, and interest to the assets of the "El Dorado Practice" office which had been operated by Stevens as an employee of AWH.

Debtor and Holly Lynna Stevens jointly filed for relief under Chapter 7 on February 11, 2005.

**B. Transfers in Issue.**

Trustee seeks to recover the following as preferential transfers in the total amount of $253,507.99, as stated in the pretrial order. The specific transfers are:

| Amount | Date | Source[12] |
|--------|------|-----------|
| $79,085.99 | March 8, 2004 | Personal check using 401(k) funds |
| $25,000.00 | March 8, 2004 | Personal check from 401(k) funds |
| $ 7,000.00 | March 15, 2004[13] | Credit from salary |

---

[12] The parties did not expressly state the source of payment for each transfer in a chart form, and the Court has made these conclusions based upon the statements of uncontroverted facts.

[13] This payment is included in the Trustee's statement of uncontroverted facts (which is not controverted by AWH) but is omitted from AWH's statement of uncontroverted facts (which is not controverted by Trustee). This amount is not included in Defendant's Amended Response to Plaintiff's First Interrogatories, Interrogatory No.1., which asked AWH to "[i]dentify all sums of money received by defendant from William Michael Stevens, M.D. for the time period February 1, 2004 through December 30, 2004." However, this amount must be included for the total of the transfers to equal the amount stated in the pretrial order.

6

| | | |
|---|---|---|
| $ 7,000.00 | March 15, 2004[14] | Credit from salary |
| $ 5,500.00 | June 15, 2004[15] | Credit from salary |
| $ 5,500.00 | June 30, 2004[16] | Credit from salary |
| $18,600.00 | July 8, 2004 | Credit for stock buy-back |
| $37,051.00 | July 8, 2004 | Credit for June collections |
| $50,000.00 | July 8, 2004 | Money order from Debtor |
| $ 8,000.00 | August 2, 2004 | Credit from collections |
| $ 6,000.00 | September 2, 2004 | Credit from collections |
| $ 4,771.00 | October 1, 2004. | Credit from collections |

**C. Offset Defense.**

Trustee filed the preference complaint on November 21, 2005, and AWH filed its answer on January 16, 2005. The only alleged affirmative defenses plead in the answer were "failure to state a claim" and "ordinary course." The defense of offset was included in the draft pretrial order prepared by AWH. Trustee moved to strike the defense and gave notice of a hearing on the motion for September 5, 2006. AWH did not file a written opposition, and the motion was granted at the status conference held on September 5, 2006.

The payments received by AWH during August, September, and October, 2004 were received pursuant to paragraph 8 of the Settlement Agreement, as amended, which provided in part:

> The Settlement Amount [$68,771.00] shall be paid by Stevens in the following manner: (I) . . . $50,000.00 . . . to be paid in the form of cash, wire transfer, or . . . (ii) . . . $8,000.00 . . . to be withheld from the Accounts Receivable collected in accordance with paragraph 9 in the month of August; (iii) . . . $6,000.00 . . . to be withheld from the Accounts Receivable collected in . . . September; and (iv) . . . $4,771.00 . . . to be withheld from the Accounts Receivable collected in . . . October.

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

Case 05-05816    Doc# 70    Filed 04/05/07    Page 7 of 24

**D. Insolvency.**

AWH presents three facts in support of its contention that Debtor was not insolvent at the time of the transfers. The first is that when the petition was filed the debtors owned stock in Cypress Aesthetics, Inc. and Cypress Aesthetics Medical, P.A., having a going concern value of $500,000, net of liabilities. The second is that as of June 2004, Debtor projected gross income of $3,198,000 for a 12 -month period from operation of these corporations. The third is that a medical malpractice action pending against Debtor in December 2004 was dismissed without prejudice on February 27, 2006.

Trustee controverts the first fact, the going concern value of the two corporations as stated by AWH, based upon the facts, as stated in the Debtor's testimony, that the entities leased most equipment and Debtor received no income from these corporations for 2004. The estimated gross income is controverted by the fact that the actual earnings of Debtor for 2004 were $48,880.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. Controlling Statute.**

The Trustee seeks to recover from AWH the allegedly preferential transfers pursuant to § 547(b), which provides:

> (b) Except as provided in subsection (c) of this section, the trustee
> may avoid any transfer of an interest of the debtor in property--
>   (1) to or for the benefit of a creditor;
>   (2) for or on account of an antecedent debt owed by the debtor
>   before such transfer was made;
>   (3) made while the debtor was insolvent;
>   (4) made--
>     (A) on or within 90 days before the date of the filing of the
>     petition;  or

8

> (B) between ninety days and one year before the date of the
> filing of the petition, if such creditor at the time of such transfer
> was an insider; and
> (5) that enables such creditor to receive more than such creditor
> would receive if--
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent
> provided by the provisions of this title.

When, as in this case, the transfers were more than 90 days prior to the date of filing, the

elements necessary to recovery include that the transferee was an insider and the debtor was

insolvent on the dates of the transfers. The burden of proof is on the Trustee to establish all

elements.[17]

**B. Summary judgment on the basis that AWH was not an insider is denied.**

AWH moves for summary judgment on the basis that the uncontroverted facts establish

that AWH was not an insider of the Debtor when the transfers were made. When the debtor is an

individual, the Code defines insider as follows:

> (31) "insider" includes--
> (A) if the debtor is an individual--
> (I) relative of the debtor or of a general partner of the
> debtor;
> (ii) partnership in which the debtor is a general partner;
> (iii) general partner of the debtor; or
> (iv) corporation of which the debtor is a director, officer, or person
> in control;[18]

---

[17] 11 U.S.C. § 547(g).

[18] 11 U.S.C. § 101(31)(A).

9

In addition, an affiliate of the debtor, as defined in § 101(2), is also an insider.[19]  An affiliate

includes a "corporation 20 percent or more of whose outstanding voting securities are directly or

indirectly owned, controlled, or held with power to vote, by the debtor."[20]

The foregoing definition, as well as the definitions applicable when the debtor is a

corporation, partnership, or municipality, are detailed and deceptively simple.[21]  One

commentator when discussing insider status as it relates to preferences, upon consideration of all

of the definitions of insider, concludes:

> Upon examination of the various definitional provisions in
> the Code, it appears that the core concept is two-fold.  Initially, an
> insider is a person who has either actual control, or the ability to
> control or influence the actions of the debtor.  Thus, with respect to
> a corporate debtor, various officers, directors, and substantial stock
> holders are listed as insiders. . ..  In all of the instances of
> "controlling" insiders, the relevance of potential control to the issue
> of avoiding a preference is obvious.
>
> The definition of an "insider" also applies to persons in
> whom the debtor has an interest and, perhaps, a controlling role.
> Included within this general theme are corporations in which the
> debtor is a director, officer, or a major shareholder.  Also included
> are persons whose business is being operated by the debtor. . ..  The
> motivation for the inclusion of these people seems to be that a
> preference to such a party may be motivated by the personal

---

[19] 11 U.S.C. § 101(31)(E).

[20] 11 U.S.C. § 101(2)(B).

[21]  The term "insider" is utilized in many Code sections in addition the preference section
at issue in this case. *E.g.*, 11 U.S.C. § 303(b)(2) (excluding insiders for the purpose of filing an
involuntary petition);  11 U.S.C. § 702(a)(3) (election of a trustee); and § 11 U.S.C. § 1129(a)(10)
(prerequisites for confirmation of a plan).  The construction of insider adopted by the Court in this case is
dependent, at least in part, upon the purpose of the expanded preference period for insiders and is made
without intent that it control when insider is relevant in other circumstances.  See *Rush v. Riddle (In re
Standard Stores, Inc.),* 124 BR. 318, 324 (Bankr. C.D. Cal. 1991) (stating "[in] light of the many and
varied uses of 'insider,' I conclude it is appropriate to consider the purpose of the particular statute in
which the term 'insider' is used.")

Case 05-05816   Doc# 70   Filed 04/05/07   Page 10 of 24

relationship, and that preferences to these persons might be used as
part of a fraudulent scheme.[22]

The Code definition of insider "does not purport to set forth, to the exclusion of all others, those entities which may be insiders of a debtor."[23] The Code rules of construction provide that use of the word "includes" is not limiting.[24] With respect to the definition of insider, "[t]he use of the word 'includes' is indicative of Congress' intent not to limit the classification of insiders to the statutory definition."[25] Courts have therefore identified "[t]wo distinct types of insiders, those entities specifically mentioned in the statute" and those "not listed in the statutory definition."[26] When the transferee satisfies one of the enumerated statutory categories, the transferee is called a per se or statutory insider, and the court generally does not examine the actual nature of the relationship, as the insider is considered close enough as a matter of law.[27] On the other hand, "[i]n determining whether a person is a non-statutory insider, courts have generally focused on two basic factors: (1) the closeness of the relationship between the debtor and the transferee, and (2) whether the transactions between the transferee and the debtor were conducted at arm's length."[28] These factors are derived from the legislative history which refers to a person having

---

[22] 3 Norton Bankruptcy Law & Practice ¶ 57:35 (Norton, auth & ed.-in- chief 2006).

[23] *Hunter v. Pool Pals Mfg., Inc. (In re Benson)*, 57 B.R. 226, 230 (Bankr. N. D. Ohio 1986).

[24] 11 U.S.C. § 102(3).

[25] *Miller Ave. Prof. and Prom. Serv., Inc. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 631 (9th Cir. BAP 2004), *quoting In re Friedman*, 126 B.R. 63, 69-70 (9th Cir. BAP 1991).

[26] *In re Enter. Acquisition Partners, Inc*, 319 B.R. at 631, *quoting Wilson v. Huffman*, 712 F.2d 206, 210 (5th Cir. 1983).

[27] *In re Enter. Acquisition Partners, Inc.*, 319 B.R. at 631.

[28] *Hirsch v. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002); see *In re Standard Stores, Inc.,* 124 B.R. at 325; *see Zakroff v. Markson (In re Ribcke)*, 64 B.R. 663 (Bankr.

11

such a "close relationship" with the debtor "that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. . .."[29]  Accordingly, as to non-statutory insiders, "[t]he analysis is a fact intensive one and must be done on a case-by-case basis."[30]  If the evidence reveals that the debt and its repayment were not commercially-motivated, arm's length transactions, the court must subject the transaction to close scrutiny and determine "whether the relationship of the parties was of such a nature as to warrant a determination of non-statutory insider status by analogy to the statutory definitions" in Section 101(31).[31]

In this case, AWH, focusing on the definition in § 101(31)(A)(iv), contends that given the uncontroverted facts, AWH was not an insider on the date of any of the transfers, because Debtor was not an officer after September 2003, Debtor resigned as a director on February 24, 2004, and there is nothing in the record to show that Debtor controlled AWH.  On the other hand, Trustee, in support of the contention that AWH was an insider of Debtor, focuses upon the word "includes" in the definition, the closeness of the relationship between Debtor and AWH, and whether that relationship resulted in an advantage of AWH over other unsecured creditors of the Debtor.

---

D. Md. 1986) (even if relationship between debtor and the parents of his deceased wife did not to satisfy Code definition of relative for purposes of insiders, summary judgment of absence of insider status denied where parents could be insiders in fact); *In re Benson*, 57 B.R. at 230 (finding issue of fact whether business and social relationship was sufficient to constitute insider status).

[29]  3 Norton Bankruptcy Law & Practice 2d § 57:35, *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 312 (1977).

[30]  *In re A. Tarricone, Inc.*, 286 B.R. at 262; *see* 2 *Collier on Bankruptcy* ¶ 101.31 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2006) (stating "[w]hether or not an individual or an entity will qualify as an insider is a question of fact").

[31]  *In re A. Tarricone, Inc.*, 286 B.R. at 263.

Under the facts of this case, there is no doubt that AWH was a statutory insider of the Debtor when his debts to the corporation were incurred. At those times, he was a director and corporate treasurer and therefore a per se insider. The question is whether insider status terminated because in September 2003 Debtor failed to be re-elected treasurer and on February 24, 2004, less than one year but more than 90 days pre-petition, resigned as a director. The foregoing authorities show there are two ways in which insider status may have continued. First, per se or statutory insider status would have continued if AWH was an affiliate based upon Debtor's stock ownership, which continued at least through June, 2004. Second, after February 24, 2004, AWH may have been a non-statutory insider based upon Debtor's relationship with AWH.

*In re Trans Air*[32] illustrates the continuation of insider status based upon a continuing close relationship between a corporate debtor and a stockholder/employee after termination of the legal relationships upon which per se insider status was based. In that case, the trustee sought to set aside a transfer made on May 8, 1986, to the wife of the corporate debtor's former principal stockholder and CEO. The transferee's husband had sold his stock in April and terminated his employment effective May 2, 1986. Not withstanding these changes, the court found, based upon the evidence, that on May 6, 1986 the transferee was an insider because of her relationship with her husband who after May 2, 1986, the date of termination of employment, continued his "involvement and control over the debtor corporation."[33]

---

[32] *Chase Manhattan Bank, N.A. v. Dent (In re Trans Air, Inc.)*, 103 B.R. 322 (Bankr. S.D. Fla. 1988); *see In re Krehl*, 86 F.3d 737 (7th Cir.1996) (individual's status as insider of corporate debtor did not end when individual debtor resigned as president of corporate debtor).

[33] *In re Trans Air, Inc.*, 103 B.R. at 325.

13

Non-statutory insider status is also illustrated by *In re Standard Stores*.[34] Riddle was the defendant in an insider preference case brought by the trustee of the corporate debtor. Riddle had been the general manager of debtor, and shortly before Riddle quit, Freeman, a shareholder, director, and president of debtor, approached Riddle asking for $25,000 loan to the corporation. Riddle agreed, the funds were transferred, and a loan agreement dated May 5, 1987 was executed. On or about June 3, 1987, more than 90 days but less than one year before the filing of the corporation's Chapter 7 bankruptcy, and after debtor had received refunds on insurance policies, Freeman caused debtor to pay the principle and interest on the Riddle loan. At about the same time, Riddle incorporated a business having a name similar to debtor's and purchased two stores operated by debtor. Although finding that Riddle did not satisfy any of the statutory definitions of an insider of a corporate debtor, the court held that he was an insider at the time the loan was paid based upon his relationship with the debtor. It found that Riddle had a close relationship with the debtor at the time of the transfer and that the transfer was less than arm's length based upon evidence that Freeman caused the debtor to pay Riddle because of the Riddle/Freeman relationship and because Freeman had promised Riddle he would repay the loan if the debtor did not.

The Court finds that AWH is not entitled to summary judgment on the insider issue. The uncontroverted facts establish that Debtor was not an officer, director, or person in control of AWH on the dates of transfer as required for per se insider status based on § 101(31)(A)(iv). AWH's motion for summary judgment is focused exclusively on this definition. However, AWH fails to satisfy the movant's initial burden to show that it is entitled to judgment on the insider

---

[34] *In re Standard Stores, Inc.*, 124 BR. at 318.

14

issue as a matter of law. The uncontroverted facts do not preclude Trustee from prevailing on the grounds other that § 101(31)(A)(iv). As to per se status, AWH has made no showing that Debtor owned less than 20 percent of the voting securities on AWH until at least June 30, 2004, leaving open the possibility that at the times of most of the transfers AWH continued to be a per se insider based upon § 101(31)(E). In addition, and more importantly, the facts presented by AWH as a basis for summary judgment do not exclude a finding that the transactions were not arm's length commercial transactions or that the long standing relationship between Debtor and AWH was a reason for AWH to get paid in preference of Debtor's other creditors. Rather, as argued by Trustee, the uncontroverted facts presented by AWH in support of its motion, when supplemented by the facts presented by the Trustee, provide a basis for the trier of fact to question whether the loans and excess draws were made in accord with commercial standards and whether the transfers for payment were made for reasons other than those which would attend arm's length commercial transactions. Of particular relevancy are the uncontroverted facts that Debtor continued as an employee when most of the transfers were made, a portion of Debtor's payment of his debt to AWG was satisfied by offset of salary, and AWG's 401(k) plan was amended to allow hardship withdrawals by Debtor, resulting a distribution to Debtor allowing him to satisfy the loans of $79,085.99 and $25,000 owed to AWG. The uncontroverted facts also establish that as part of the settlement agreement effective June 30, 2004, AWH transferred the El Dorado practice office to Debtor, even though his debt to AWH had not been paid in full.

Contrary to AWH's arguments, the Court finds that AWH may be a non-statutory insider even though Trustee has not provided evidence that Debtor controlled AWH. As stated above, the factors that courts consider in determining if a person is a non-statutory insider are the

15

closeness of the relationship between the debtor and the transferee and whether the transactions between the transferee and the debtor were conducted at arm's length. Control may be a factor in these considerations, but it is not a required element. *In re A. Tarricone*,[35] when holding that a personal friend of a statutory insider of a corporate debtor was an insider, directly addressed this issue. Control was rejected as "neither appropriate nor relevant" where insider status is not predicated on control but on close personal relationship and facts evidence that the transaction was not at arm's length.[36] The court found "[w]here Congress intended control to be an element in determining insider status, it was specified in the statute" and notes that "only two of the sub-categories in Section 101(31) require a finding of control by the person who is to be held an insider."[37] The court reasoned that it was self evident that "most directors," "subordinate officers," and relatives of such persons do not exercise "control" over a corporate debtor.[38] This same analysis applies when, as in this case, the debtor is an individual rather than a corporation. Only a portion of one of the statutory list of insiders of individual debtors requires control. Relatives of the debtor, general partners of the debtor, a partnership in which the debtor is a general partner, and general partners of the debtor are all insiders without regard to control.[39] A corporation is a statutory insider of an individual if the debtor is a "director, officer, **or** person in

---

[35] *In re A. Tarricone, Inc.*, 286 B.R. at 256.

[36] *Id.*, 286 B.R. at 264-66.

[37] *Id.*, 286 B.R. at 264, citing 11 U.S.C. §§ 101(31)(B)(iii) and (C)(v).

[38] *Id.*, 286 B.R. at 364.

[39] 11 U.S.C. § 101(31)(A).

16

control."[40]  Congress did not require the debtor officer or director to exercise control for the corporation to be an insider.

The Court further notes that in those non-statutory insider cases where control is a factor, the degree and type of control is characterized as "significant amount of control or influence,"[41] a relationship with the debtor "close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties,"[42] or "such control or influence . . . to render . . . transactions not arms-length."[43]  This does not equate to control over policy and assets as urged by AWH.

The primary case relied upon the AWH for the proposition that it is entitled to summary judgment because of the absence of evidence of control of AWH by Debtor is *In re Kunz*.[44]  *Krunz* addressed the issue of whether a director emeritus of a bank should be considered a director for purposes § 101(31)(A)(iv).  The BAP reversed the lowers court's grant of summary judgment based upon an emeritus director being equivalent to a director was a matter of law.  It found that the common meaning of director "includes an element of control of the corporation" and  held that issues of fact would determine whether the degree of control of an emeritus director was equivalent to that of a director.  The case concerned construction of "director" for purposes of  §

---

[40] *Id.*(emphasis added).

[41] *Off. Comm. of Unsecured Creditors v. Caroman Fin. Account, Inc. (In re Controlled Power Corp. of Ohio)*, 351 B.R. 470, 477 (Bankr. N.D. Ohio 2006).

[42] *Elsaesser v. Cougar Crest Lodge, L.L.C. (In re Weddle)*, 353 B.R. 892, 899 (Bank. D. Idaho 2006), *quoting Friedman v. Sheila Plotsky Brokers, Inc. (In re Freidman)*, 126 B.R. 63, 70 (9th Cir. BAP 1991).

[43] *Enter. Acquisition Partners, Inc.*, 319 B.R. at 633 n. 5.

[44] *Rupp v. United Security Bank (In re Kunz)*, 335 B.R. 170 (10th Cir. BAP 2005).

17

101(31)(A)(iv). It has no bearing here where the basis for insider status of AWH is the close relationship between Debtor and AWH, not statutory insider status based upon AWH being a corporation of which debtor was a director. Likewise, *In re Meridith Millard Partners*,[45] also cited by AWH, is not relevant. It concerned whether a finance company was an insider of a partnership debtor on the basis of § 101(31)(C)(v), which provides that an insider is a "person in control of the debtor."

The Court therefore denies the motion of AWH for summary judgment based upon absence of AWH's insider status when the transfers were made. There are material facts in controversy as to whether AWH was an insider. It may have been an affiliate of the Debtor, as defined by § 101(2)(B), or it may have been a non-statutory insider because of the relationship between Debtor and AWH. The uncontroverted facts on which AWH relies do not preclude insider status because they do not attempt to address these considerations. In addition, Trustee, based upon the uncontroverted facts presented, has shown that there may be sufficient evidence for the trier of fact to conclude that the transactions were not arm's length and that the payments made to AWH were related to the close relationship between Debtor and AWH.

**C. Summary judgment based upon the defense that three of the payments were not "transfers" because AWH had a common law right of offset is denied.**

In the alternative, AWH moves for partial summary judgment on $18,771 of the Trustee's claim, specifically the $8,000 payment made on August 2, 2004, the $6,000 payment made on September 2, 2004, and the $4,771 payment made on October 1, 2004. AWH argues these payments resulted from common law offset and that an offset does not constitute a transfer for

---

[45] *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Millard Partners)*, 145 B.R. 682, 688 (D. Colo. 1992).

purposes of § 547.  Trustee responds that the Court has granted his motion to strike the defense of offset from the pretrial order, and, in addition, the payments in issue were not made by offset. The Court agrees with AWH's position that offsets are not transfers for purposes of § 547.  The Code defines transfer to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property. . .."[46] Although an argument could be made that this broad definition includes offset, the legislative history irrefutably illustrates intent to the contrary.  The following identical statements by Senator DeConcini and Representative Edwards, the Senate and House sponsors of the 1978 Reform Act, indicate that Congress intended to exclude offsets from the definition of transfer "in order to assure that setoff would be treated exclusively under the provision of § 553."[47]

> Section 101(40) defines "transfer" as in the Senate amendment. The definition contained in HR 8200 as passed by the House included "setoff" in the definition of "transfer."  Inclusion of "setoff" is deleted.  The effect is that a "setoff" is not subject to being set aside as a preferential "transfer" but will be subject to special rules.[48]

Those special rules are found in § 553, which provides that other than as provided in §§ 362, 363, and 553, title 11 "does not affect any right of a creditor to offset" certain mutual debts of creditors and debtors.

In response to AWH's argument, the Trustee asserts that the August, September, and October, 2004 payments were not offsets.  The Court agrees.  The Code does not define offset,

---

[46] 11 U.S.C. § 101(54).

[47] *Holyoke Nursing Home Inc. V. Health Care Fin. Admin. (In re Holyoke Nursing Home, Inc.)*, 273 B.R. 305, 309 (Bankr. D. Mass. 2002).

[48] 124 Cong. Rec. H11090 (daily ed. Sept. 28, 1978); S17407 (daily ed. Oct. 6, 1978).

19

and the right preserved is that available under state law.[49]  "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A'."[50]  Offset is a "nonconsensual, self-help remedy."[51]  Under Kansas law, a right of offset is exercised when a creditor "seizes . . . funds in payment of a debt owed to the [creditor] by the debtor."[52]  In this case, there was no seizure; the payment of Debtor's obligation to AWH by the application of a portion of his collected accounts receivable was consensual having been authorized by Debtor in the Settlement Agreement, as amended.  The August, September, and October 2004 payments to AWH were transfers for purposes of § 547.

As a variation of its argument that the August, September, and October payments were not transfers, AWH  argues that it is entitled to summary judgment on the preference claim as to those transfers because Trustee cannot prevail on the required element that the transfers resulted in a greater distribution to AWH than in an hypothetical Chapter 7 distribution, as required by § 547(b)(5).  "In making this [§ 547(b)(5)] determination, the court must decide the transferee's creditor class and determine what distribution that class would have received had the transfer not been made."[53]  Stated differently, the subsection requires a "two-part analysis.  First, one must

---

[49] *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18 (1995).

[50] *Rose v. Via Christi Health System, Inc.*, 279 Kan 523, 527, 113 P.3d 241, 245 (2005), *quoting Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913).

[51] 3 Norton Bankruptcy Law and Practice 2d § 63:3.

[52] *Iola State Bank v. Bolan*, 235 Kan. 175, 188, 670 P.2d 720 (1984); *see* 5 *Collier on Bankruptcy* ¶ 553.05[1] (generally offset "does not occur unless three steps have been taken: '(i) a decision to effectuate a setoff; (ii) some action accomplishing the setoff; and (iii) a recording of the setoff,'" *quoting Citizens Bank of Maryland v. Strumpf*, 229 U.S. at 528).

[53] 5 *Collier on Bankruptcy* ¶ 547.03[7].

20

determine what the creditor receives if the transfer remains valid.  Second, one must determine what the creditor would have received in a liquidation case if the transfer had not been made."[54]

In this case, the August, September, and October transfers, if not set aside, would allow AWH to receive one hundred percent of that portion of its claim.  If the transfers had not been made, in this liquidation case AWH would be an unsecured creditor who would receive less than 100% of its claim.  Although generally a right of offset gives rise to a status similar to that of a secured creditor, there is no evidence that as of the petition date AWH held funds owed to Debtor which could have been offset against the claims.

*In re Mason and Dixon Lines*[55] illustrates how a preference defendant's continuing right of offset provides a defense because of § 547(b)(5).  Debtor and the preference defendant St. Johnsbury were both common carriers and participated in interline arrangement for freight carriage.  Each carrier hauled freight for the other and became indebted to one another for the services.  The agreement between the carriers provided that if any carrier became more than 30 days delinquent in payment for services, the creditor carrier could offset amounts owed by it to the delinquent carrier.  During the preference period, debtor paid St. Johnsbury, a participating carrier, over $4,000 in seven checks, which were alleged to be preferential transfers.  When comparing what St. Johnsbury would have received in a Chapter 7 with what it received pre-petition because of the payments by check, the court concluded that it had a continuing right of offset so under Chapter 7 if the checks had not been issued it would have received 100% of its

---

[54] 3 Norton Bankruptcy Law & Practice § 57:9.

[55] *The Mason and Dixon Lines, Inc. v. St. Johnsbury Trucking Co. (In re The Mason and Dixon Lines, Inc.)*, 65 B.R. 973 (Bankr. M.D.N.C. 1986).

21

claim. "St. Johnsbury was in the position of a creditor with a continuing right of setoff if the debtor . . . failed to pay St. Johnsbury."[56]

In this case there was nothing owed by AWH to Debtor on the date of filing which could have been a basis to satisfy the $18,771 claim by offset, if the transfers in August, September, and October had not been made. Because of the transfers AWH received more that it would have received in a Chapter 7 liquidation. AWH is not entitled to summary judgment based upon the contention that the § 547(b)(5) is not satisfied. Because Trustee has not moved for summary judgment on this element, it will be included in his burden of proof at trial, unless AWH concedes that this element is satisfied as a matter of law.

Finally, Trustee argues that AWH is in essence requesting the Court to reconsider its prior ruling denying the offset defense. To the extent that offset would constitute an affirmative defense,[57] the prior order is not rescinded. Trustee's motion to strike the defense of offset proposed by AWH in the draft pretrial order was filed on August 31, 2006, with notice of hearing on September 5, 2006. No objection to the motion was filed by AWH. The motion was granted at a status conference held on September 5, 2006. The issue of offset as an affirmative defense was not correctly raised and will not be allowed for the first time as a basis for summary judgment.[58]

_____

[56] *Id.*, 65 B.R. at 976.

[57] Although briefed by the parties, the Court declines to address the issue of whether offset constitutes an affirmative defense to a preference action. It appears to the Court that AWH's position has been fully considered under the theories that either the August, September, and October payments were not transfers or the § 547(b)(5) element is not satisfied as to these transfers. If AWH or Trustee believe that the affirmative defense issue remains material to resolution of the pending motion or trial on the merits, the Court suggests that a motion to reconsider be filed.

[58] If AWH wished the Court to reconsider its September 5, 2006 grant of Trustee's motion, it should have filed a motion for reconsideration, together with a motion to amend its answer.

22

For the foregoing reasons, the Court holds that AWH is not entitled to summary judgment for the payments made in August, September, and October 2004. The Court finds the payments were transfers and not offsets. The Court also finds that the uncontroverted facts provided by AWH do not establish that AWH received no more than it would have if it had not been paid and participated as a creditor in a Chapter 7 distribution.[59]

**D. AWH is not entitled to summary judgment based upon the contention that Trustee can not establish that Debtor was insolvent of the dates of the transfers.**

Finally, AWH contends it is entitled to summary judgment on all challenged payments because the Trustee cannot establish the required element that Debtor was insolvent on the dates of the transfers. An individual is insolvent if the sum of the individual's debts is greater than all of such person's property at a fair valuation, exclusive of property transferred, concealed, or removed with intent to hinder, delay, or defraud and property exempt under § 522.[60]

AWH's motion for summary judgment argues that when conducting discovery Trustee has not used the foregoing Code definition of insolvency and has not gathered sufficient evidence from which insolvency can be found. This is an argument which would be appropriate after trial if AWH believed that Trustee had failed to satisfy his burden of proof. But this case is before the Court on AWH's motion for summary judgment. When moving for summary judgment, AWH has the burden to establish the absence of a genuine issue of fact concerning insolvency. It has failed to do so. As stated above, AWH relies upon three facts purportedly evidencing solvency. The Court finds Trustee has controverted those facts and presented extensive argument, supported

---

[59] Trustee did not move for summary judgment, so his burden of proof at trial will include this element.

[60] 11 U.S.C. § 101(32)(A).

Case 05-05816    Doc# 70    Filed 04/05/07    Page 23 of 24

by references to the discovery record and bankruptcy schedules, which establish issues of material fact regarding the insolvency element.

The Court finds there are material facts in controversy regarding the Debtor's solvency on the dates of the transfers and denies AWH's motion for summary judgment on this issue.

**CONCLUSION.**

For the foregoing reasons the Court denies AWH's motion for summary judgment and finds that trial will be necessary to determine whether AWH was an insider of the Debtor and whether Debtor was insolvent on the dates of the transfers. The defense that the payments were offsets permitted under the Code is foreclosed, but Trustee does have the burden to establish that the amount received by AWH on its claim is greater than is would receive if its right to payment were determined under Chapter 7.

**IT IS SO ORDERED.**

###

Case 05-05816    Doc# 70    Filed 04/05/07    Page 24 of 24